IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ROY DEAN TAYLOR,<br><br>  Plaintiff,<br><br>v.<br><br>LOGAN CLARK,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:15-CV-343-DN<br><br>District Judge David Nuffer |

Plaintiff, Roy Dean Taylor, raises claims under 42 U.S.C.S. § 1983 (2019) as to his medical care by Defendant Clark during a six-month period at Wasatch County Jail (WCJ). (Doc. No. 3.) Plaintiff requests the following relief: "a real doctor" and "pain and suffering" damages.[1]

Defendant filed a *Martinez* report with medical and other records and his declaration as to Plaintiff's treatment. (Doc. No. 24.) Plaintiff's response to the *Martinez* report and summary-judgment motion lacks substantive argument and evidentiary support.[2]

**SUMMARY-JUDGMENT STANDARDS**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the

---
[1]Plaintiff's Complaint shows Defendant Clark being sued in his "official capacity" only. (Doc. No. 3, at 1.) So, Plaintiff's damages claims "are precluded by the Eleventh Amendment," which bars assertion of "a damage claim against state officers in their official capacities." *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). "Because Eleventh Amendment immunity is jurisdictional," the dismissal on damages is "without prejudice." *Id*. at 1278.
[2]Plaintiff provided only five pages of medical records from before and after his time at WCJ, which made them irrelevant. (Doc. No. 45, at 5-9.)

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1)(A). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, "the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In ruling on a summary-judgment motion, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

To educate Plaintiff about his duty in responding to a summary-judgment motion, the Court stated in an order,

> Plaintiff is notified that if Defendant moves for summary judgment Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

(Doc. No. 10, at 5-6.)

## UNDISPUTED MATERIAL FACTS

1. Plaintiff was held at WCJ for about forty-five weeks, from October 2014 through August 2015. (Doc. Nos. 24, at 1, & 24-2, at 3.)

2. During the relevant time, Defendant was licensed physician assistant at WCJ. (Doc. Nos. 24, at 1-2, & 24-2, at 2-3.)

3. During the relevant time, Plaintiff had chronic back pain, stomach symptoms, breathing problems, headaches, and swollen feet and hips. (Doc. Nos. 3, at 4-5, & 24-2, at 3.)

4. During Plaintiff's forty-five weeks at WCJ, Defendant provided medical care to Plaintiff no fewer than twenty-five times. (Doc. No. 24-2, at 3.)

5. On October 29, 2014, within one week of Plaintiff's arrival at WCJ, Defendant examined Plaintiff, noting, "Plaintiff did not appear in any acute distress, had a normal exam, and had no shortness of breath or difficulty breathing. Nevertheless, I prescribed Plaintiff inhaler medication." (Doc. No. 24-2, at 3.)

6. On November 5, 2014, Defendant reviewed Plaintiff's health-care request, noted "nothing alarming" had been observed at Plaintiff's examination week before, and determined Plaintiff did not need extra mattress. (Doc. No. 24-4, at 3.)

7. On November 18, 2014, Defendant reviewed Plaintiff's health-care request, determining Plaintiff did not need extra mattress and "regular chair." (Doc. No. 24-4, at 4.)

8. On November 26, 2014, Defendant examined Plaintiff, ordering "ultrasound" and prescribing "muscle relaxant" for leg pain; "Eucerin cream" for "dry feet"; and complete blood count. (Doc. Nos. 24-2, at 3-4, & 24-4, at 5.)

9. On December 2, 2014, "final report" filed on "diagnostic imaging," ruling out blood clot. (Doc. No. 24-5, at 3.)

10. On December 3, 2014, Defendant noted he advised Plaintiff to make effort to get to "pill line" so Plaintiff would not miss breathing medications and he revisited treatment of back pain and determined it was appropriate. (Doc. Nos. 24-2, at 4, & 24-4, at 6.) "The results of the ultrasound were normal." (Doc. No. 24-2, at 4.)

11. On December 10, 2104, Defendant reviewed Plaintiff's health-care request, determining Plaintiff's assertion he was coughing up blood had not been corroborated by observation, "nothing alarming ha[d] been noted," and Defendant would "continue to monitor and follow up as needed." (Doc. No. 24-4, at 7.)

12. On December 23, 2014, Defendant reviewed Plaintiff's health-care request as to foot pain, determining crutch not needed, x-ray results pending, current treatment "appropriate," and continued monitoring to be done as needed. (Doc. No. 24-4, at 8.)

13. In December 2014, Defendant ordered an MRI as to Plaintiff's complaints of foot pain. (Doc. No. 24-2, at 4.)

14. On January 8, 2015, a "final report" was filed on "MRI right foot," stating normal results except for "old healed fracture." (Doc. No. 24-5, at 4.)

15. On January 14, 2015, Defendant reviewed Plaintiff's health-care request stating he "no longer wanted his pain medication refilled," to which Defendant responded by discontinuing that medication. (Doc. Nos. 24-2, at 4 & 24-4, at 9.)

16. On January 22, 2015, Defendant reviewed Plaintiff's health-care request, observing Plaintiff's physical condition and ordering continuation of one of Plaintiff's breathing medications. (Doc. Nos. 24-2, at 4, & 24-4, at 10.)

17. On February 5, 2015, Defendant examined Plaintiff, ordering medication for "constipation and upset stomach" and continued monitoring of "restless legs," after noting "[l]eg examination, x-rays, CT have been normal." (Doc. Nos. 24-2, at 4-5, & 24-4, at 11.)

18. On February 11, 2015, Defendant reviewed Plaintiff's health-care requests and prescriptions, and, in response to Plaintiff's complaints about timing of medication doses, Defendant noted Plaintiff should take medication at times offered. (Doc. Nos. 24-2, at 5, & 24-4, at 12.)

19. On February 18, 2015, Defendant reviewed Plaintiff's health-care request about back and hip pain, stomach issues, and breathing problems, noting in Plaintiff's chart that current medication regimen was "appropriate," he had been monitored "closely," was "not taking his medications as prescribed," and Defendant planned to consult Dr. Tubbs for other options. (Doc. Nos. 24-2, at 5, & 24-4, at 13.)

20. On March 4, 2015, Defendant examined Plaintiff as to "stomach problems," noting "Plaintiff had not been taking his medications" and prescribing "endoscopy and colonoscopy." (Doc. Nos. 24-2, at 5, & 24-4, at 14.)

21. On March 11, 2015, Defendant reviewed Plaintiff's health-care request about difficulty breathing, noting Dr. Tubbs had seen Plaintiff, Plaintiff remained concerned about timing of medication deliveries, and medication had been prescribed (Doc. Nos. 24-2, at 5, & 24-4, at 15.)

22. On March 18, 2015, Defendant reviewed Plaintiff's health-care request asking when he would have his endoscopy and colonoscopy procedures, advising Plaintiff that scheduling such procedures takes time. (Doc. Nos. 24-2, at 6 & Doc. No. 24-4, at 16.)

23. On April 7, 2015, Defendant examined Plaintiff for edema, found minimal swelling, reviewed lab work, and advised hydration and activity. (Doc. Nos. 24-2, at 6, & 24-4, at 17.)

24. On April 15, 2015, Defendant reviewed Plaintiff's multiple health-care requests, determining Plaintiff had already been seen for his complaints and prescribed appropriate medication, which he was not taking or using only sporadically, and scheduled for endoscopy and colonoscopy. (Doc. Nos. 24-2, at 6 & 24-4, at 18.)

25. On April 23, 2015, Defendant noted Plaintiff's health care requests were repetitive, Plaintiff was treated appropriately, but Plaintiff had been refusing some of his medications. (Doc. No. 24-2, 7.) Plaintiff signed his Complaint in this case. (Doc. No. 3, at 7.)

26. On unknown date, Plaintiff's private doctor who treated him for eight years wrote letter about Plaintiff's medical needs that Plaintiff showed to Defendant. (Doc. No. 3, at 4.)

**ANALYSIS**

To succeed under the Eighth Amendment, Plaintiff must demonstrate acts or omissions harmful enough to show deliberate indifference that offends "'evolving standards of decency.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted). That amendment proscribes only deliberate indifference constituting the "'unnecessary and wanton infliction of pain.'" *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion)). Moreover, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to *serious*

medical needs." *Id.* at 104 (emphasis added). Plaintiff has to show that Defendant's actions were more than negligent. Negligent failure to give sufficient medical care, even touching medical malpractice, does not equal a constitutional violation. *Id*. at 106.

*Estelle*'s deliberate-indifference standard has an objective component asking whether the alleged deprivation is "sufficiently serious," and a subjective component asking whether the defendant official "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). The subjective component questions whether prison officials acted with a "sufficiently culpable state of mind." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525-26 (10th Cir. 1992). "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate the risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Thus, Plaintiff must show he suffered from a serious condition that Defendant knew about and ignored, and that by ignoring Plaintiff's condition, or failing to take reasonable steps to alleviate the risk, Defendant caused Plaintiff serious physical harm or the unnecessary, wanton infliction of pain.

Here, Plaintiff's claims fail because Defendant did not disregard substantial risk of serious harm to Plaintiff's health. Rather, based on uncontroverted evidence, Defendant answered each of Plaintiff's numerous medical requests and referred him out for testing as deemed necessary.

When the only dispute about a prisoner's medical treatment regards adequacy, "'courts are generally reluctant to second guess [professional] medical judgments.'" *Maez v. Merrill*, No. 2:07-CV-986 TC, 2008 U.S. Dist. LEXIS 72842, at *6-7 (D. Utah September 23, 2008)

(unpublished) (quoting *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980)); *see Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Mere disagreement between a prisoner and prison medical staff as to diagnosis or treatment does not support a deliberate-indifference claim. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1536 (10th Cir. 1992). Eighth Amendment violations occur only when medical treatment is so grossly incompetent, inadequate, or excessive as to "'shock the conscience or be intolerable to fundamental fairness.'" *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citation omitted). An inmate's belief that he should have been treated differently does not show "deliberate indifference." *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (unpublished) (citation omitted).

Here, Plaintiff's claims are, at best, a "difference of opinion" as to diagnosis and treatment. *See Olson* 9 F.3d at 1477. Each time, when Plaintiff reported symptoms, his treatment was reviewed, exams were done, observations were made, testing was arranged, and prescriptions were offered. When he said the medication did not work, he was offered advice on taking his medication more regularly. He was referred Plaintiff for testing, including ultrasound, x-rays, CT scan, MRI, and endoscopy/colonoscopy. Further, Plaintiff's allegations that he did not receive adequate and necessary medical care are nothing more than Plaintiff's differing opinion as to the judgments made by medical professionals who continually evaluated Plaintiff's conditions during the time in question. Plaintiff's medical records clearly show his concerns and requests were consistently addressed.

As a matter of law, offering treatment based on a professional's medical judgment, even if it is not what an inmate wants, does not rise to the level of deliberate indifference.

*Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). Also, when records show an inmate has been monitored, attended to, and treated often, the inmate cannot show deliberate indifference. *Wingfield v. Robinson*, No. 10-CV-01375, 2011 U.S. Dist. LEXIS 125825, at *32 (D. Colo. August 10) (missing subjective intent for deliberate indifference when defendants responded to grievances, examined plaintiff, and prescribed treatment more than fifteen times). Here, Plaintiff was consistently evaluated by Defendant and others. And, Plaintiff's medical records show that Plaintiff received ongoing medical help from Defendant and others for each medical issue raised.

As noted, Plaintiff sues Defendant because he disagrees with treatment plans. But, an "informed judgment" as to appropriate treatment does not amount to deliberate indifference. *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986). Here, even if Plaintiff could prove that alternative treatment was medically appropriate, Plaintiff still cannot meet his burden of showing Defendant was unreasonable in relying on his own judgment and test results, and administering treatment accordingly.

The undisputed material facts show Defendant was not deliberately indifferent to Plaintiff's medical treatment.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary judgment is GRANTED, (Doc. No. 25). All claims are DISMISSED WITH PREJUDICE, except the damages claims against Defendant in his official capacity, which is dismissed without prejudice. This action is CLOSED.

Signed September 27, 2019.

BY THE COURT

_____
David Nuffer
United States District Judge